NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-3686
_____

MARIE T. SELVATO,

Appellant
v.

SEPTA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No.  2-14-cv-04919)
District Judge:  Honorable Wendy Beetlestone

Submitted Under Third Circuit LAR 34.1(a)
June 16, 2016

BEFORE:  AMBRO, NYGAARD, and VAN ANTWERPEN,[*] *Circuit Judges*

(Filed: August 8, 2016)
_____

OPINION[**]
_____

---

[*] The Honorable Franklin Van Antwerpen participated in the decision in this case, but died before the opinion could be filed. This opinion is filed by a quorum of the court. 28 U.S.C. § 46 and Third Circuit IOP 12.1(b).

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Marie Selvato appeals the District Court's order granting summary judgment to Southeastern Pennsylvania Transportation Authority (SEPTA). She claims that the District Court erred by ignoring factual disputes and by improperly evaluating evidence that she asserts substantiated her Title VII claims, brought pursuant to 42 U.S.C. § 2000e-2(a)(1). We will affirm.

This opinion does not have any precedential value. Therefore, our discussion of the case is limited to covering only what is necessary to explain our decision to the parties.

Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In Pennsylvania, claimants are required first to file a claim with the Equal Employment Opportunity Commission (EEOC). *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). To be timely, a complaint must be filed with the EEOC within 300 days of an unlawful employment action. *Id.* Selvato filed a charge with the Equal Opportunity Commission on July 17, 2013 claiming that SEPTA unlawfully terminated her on December 20, 2012 because of her gender and as retaliation for her complaints about sexual harassment she suffered on the job. She also asserts that, from 2004 through the time of her termination, SEPTA discriminated against

2

her by subjecting her to a hostile work environment in which she was sexually harassed. There is no dispute that Selvato's termination falls within the 300-day period for a timely claim. However, the District Court determined that a majority of the acts she alleges as sexual harassment are time-barred. Selvato challenges this conclusion.

Selvato alleges she was sexually harassed between 2004 until she was terminated. This timeframe includes acts that occurred well beyond the 300-day window imposed by law. Nonetheless, when an employee alleges a hostile work environment, discriminatory acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir.2006). The District Court found that the record was composed of three distinct periods. The first period covers acts she claims are sexual harassment by SEPTA supervisors and co-workers that occurred between 2004 and 2009. In the second period, from 2009 through August 2012, the record is devoid of any evidence of sexual harassment by SEPTA employees towards Selvato.[1] The third period extends from September 2012 through Selvato's termination in December 2012. During this period, Selvato alleges that SEPTA supervisor James Stevens made two remarks to her that constitute evidence of sexual harassment. Stevens told her that he was "stalking her Facebook pictures" because he had gone to school with Selvato's sister. He also told Selvato that he would like to "pet" a flower on her blouse because it looked soft, but also

---

[1] Selvato did not affirmatively assert to the District Court that acts of harassment persisted throughout the period between 2009 and August 2012. Therefore, there is no basis on which we can reasonably infer that harassment happened during this time.

3

said he was afraid that she would slap him. Appx. 281-82. Selvato complained to SEPTA's Equal Employment Opportunity (EEO) specialist about these comments.

Sevlato asserts that, collectively, this record shows a continuous pattern, from 2004 through 2012, of harassing comments and acts by SEPTA co-workers and supervisors, and a persistent institutional failure to respond to any of her complaints. Selvato argues it is this alleged institutional failure to respond that enables her to aggregate all of the evidence of harassing comments and acts from 2004 onward into a hostile work environment claim.

Even if we were to accept the premise that SEPTA did not adequately respond to Selvato's complaints, she fails to cite to any authority for her theory that an employer's failure to remedy is, itself, evidence of a continuous pattern of unlawful conduct. Given the lack of evidence of harassing conduct between 2009 and August 2012, we conclude that the District Court correctly ruled that this gap breaks the continuity necessary to establish a continuous pattern of unlawful action. As a result, evidence of harassment occurring before 2009 is well beyond the required 300 days from the date of filing, and is outside of the body of evidence that can be considered by the District Court for her hostile work environment claim under a continuing violation theory. The District Court properly construed the continuing violation doctrine narrowly (*Tearpaock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)), and did not err by considering only evidence of unlawful acts that fell within the 300 days preceding July 17, 2013, the date she filed a charge with the EEOC. Because of this, Selvato's hostile

4

work environment claim is limited to the two comments made by supervisor James Stevens in the later part of 2012.

To make a hostile work environment claim, Selvato has the prima facie burden of proffering evidence to show the following elements: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel*, 706 F.3d at 165. Therefore, at summary judgment, it was the District Court's task to judge whether any reasonable jury could conclude from the record that the alleged harassment was severe and pervasive. This inquiry included assessing the frequency of the acts and whether they were physically threatening or merely offensive utterances. *Mandel*, 706 F.3d at 168. We conclude that the District Court did not err by determining that the two comments by Stevens (concerning stalking pictures on Facebook and "petting" flowers on her blouse), though offensive, did not rise to the frequency or level of physical threat necessary to establish a prima facie hostile work environment claim.[2]

Next, Selvato challenges the District Court's decision to dismiss the claim that her termination was gender discrimination. She supports this assertion with both direct and

---

[2]Selvato asserts that acts between 2004 and 2009 can be considered here under a totality of the circumstances analysis. However, even if we were inclined to do so, the three-year period devoid of evidence of any harassment prevents a claim of severe and pervasive conduct.

5

indirect evidence.[3] Her direct-evidence argument employs a mixed-motive theory. She recognizes that SEPTA claims she was terminated for violating sick leave policy. But, she contends that SEPTA also inappropriately weighed gender-related considerations against her in their decision. The fatal problem with her claim is that there is no evidence that the decision-makers, Michael Lyles, SEPTA Director, and John Reynolds, SEPTA Senior Director of Transportation, relied on any facts other than those focused upon her infraction of the sick-leave policy in their decision to terminate her. Selvato's claim that gender-related factors influenced their decision is pure speculation.

Her case comprised of indirect evidence is wholly grounded in a contention that, although she was terminated for feigning illness in violation of the sick leave policy, similarly situated male employees were not terminated for the same conduct. However, there are problems with each of the comparators she posits. Dennis Zappone worked in a different position, for a different supervisor, and he retired before any disciplinary actions took place. These differences disqualify any comparison between him and Selvato. As for Michael Howley and Paul Dauria, the record provides no evidence that they actually feigned any illness. We may not rely on Selvato's bald assertions to infer otherwise. Given that there is no evidence that the decision-makers had any awareness of the comments made by Stevens, nor any evidence that Stevens had any role in her termination, we conclude that the District Court did not err by dismissing this claim.

---

[3]Selvato focuses upon her indirect evidence argument on appeal. However, there is overlap in the arguments she presents. Therefore, we address her claim grounded in direct evidence in an abundance of caution.

Selvato also contends that her termination violated Title VII because it was in retaliation for her complaints about sexual harassment. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995). The District Court correctly ruled that Selvato failed to provide any evidence that her claims of harassment made to SEPTA had any causal connection to her termination. Although there is no dispute that the complaints were protected activity, the temporal distance between her 2009 report to SEPTA's Equal Employment Opportunity office and her termination, without more, eliminates it as a legitimate but-for cause of retaliation.

Her second harassment report is much closer to her termination. But the subject of her report was the conduct of her supervisor James Stevens. As noted above, the persons who ultimately made the decision to terminate her were Lyles and Reynolds, not Stevens. However, Selvato claims that Stevens, along with a former supervisor and the EEO specialist who received her harassment complaint, influenced Lyles and Reynolds to fire her. But she provided no direct evidence of such influence to the District Court, or, indeed, any evidence that Lyles and Reynolds were even aware of her protected activity (the sexual harassment complaint). Merely showing that Lyles or Reynolds communicated with Stevens, or the EEO specialist, or another supervisor—where such communication is consistent with the job responsibilities of all concerned—is not

7

enough. Selvato provided nothing on which a reasonable inference of influence could be based to meet her burden to establish a prima facie retaliation claim.

Finally, Selvato asserts that she was not, in fact, feigning illness.[4] She attempts to twist her disagreement with SEPTA's findings about this into evidence that SEPTA retaliated against her. We are not persuaded by this circuitous argument. Therefore, we conclude that the District Court did not err by dismissing Selvato's retaliation claim. [5]

For all of these reasons, we will affirm the order of the District Court granting summary judgment in favor of SEPTA.

---

[4]She contends that she was, in fact, suffering from a back injury, and that the sick leave policy did not prevent her from making the day trip to New York City to see the taping of a television show. However, the plain words of the sick leave policy state: "Employees are expected to remain at home, except for medical treatment." Appx. 337.

[5] Because we conclude that Selvato did not make out a prima facie claim of discrimination, we need not address her arguments that SEPTA's stated reason for the termination—violation of the sick leave policy—is pretext.